UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PATRICIA LABAR,                          §
                                         §
          Plaintiff,                     §
                                         §
v.                                       §      CIVIL ACTION NO. 3:13-CV-2551-B
                                         §
ABC MEDICAL HOLDINGS, INC.,              §
                                         §
          Defendant.                     §

## MEMORANDUM OPINION AND ORDER

Defendant ABC Medical Holdings, Inc. ("ABC") moves to dismiss or transfer Plaintiff

Patricia LaBar's ("LaBar") declaratory judgment cause of action based on a forum selection clause

requiring that the parties to resolve their contractual disputes in either Delaware or Utah. For the

reasons that follow, the Court **GRANTS** ABC's Motion to Dismiss (doc. 6) ("ABC's Motion") to the

extent it seeks a transfer of venue to the U.S. District Court for the District of Delaware and,

otherwise **DENIES** ABC's Motion.

## I.

## BACKGROUND

This suit concerns the parties' contractual rights to funds held in an escrow account

established pursuant to their Stock Purchase Agreement ("SPA") and Escrow Agreement, both of

which were signed on January 20, 2012. (*See* Compl., Doc. 1.) Under the SPA, LaBar agreed to sell

her shares of ABC Home Medical Supply, Inc. ("ABC Medical")—a Texas-based medical equipment

company LaBar founded in 2003—for a purchase price of $11,500,000. (*See* SPA, Compl. Ex. A.)

The SPA further provided that $1,500,000 of the purchase price "shall . . . be deposited with the

Escrow Agent pursuant to the terms of the Escrow Agreement" for purposes of satisfying "indemnification claims under Section 11 of [the SPA] for a period of eighteen (18) months after the Closing Date." (SPA § 3.4.) At the close of this eighteen month period, "the remaining balance of such funds, if any," were to be remitted to LaBar in accordance with the Escrow Agreement. *Id.*

Some time later, ABC apparently filed a number of indemnification claims asserting its right to funds in the Escrow Account, to which LaBar responded by denying liability in accordance with the claim procedures set forth in the Escrow Agreement. By the time the Escrow Account was set to expire—June 30, 2013—the parties had not yet resolved their dispute. Accordingly, on July 2, 2013, LaBar filed suit in this Court—the district in which she resides—seeking a declaratory judgment concerning her rights to the Escrow Property under the SPA and Escrow Agreement.

At its first opportunity, ABC filed its pending Motion (docs. 6, 7) based on the forum selection clauses in both the SPA and Escrow Agreement. The first of these forum selection clauses is found at SPA § 11.4, which reads in relevant part:

> **Governing Law: Jurisdiction**. . . . THE PARTIES IRREVOCABLY AND EXCLUSIVELY SUBMIT TO THE JURISDICTION OF ANY APPROPRIATE FEDERAL OR STATE COURT LOCATED IN DELAWARE OR UTAH FOR PURPOSES OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF THIS AGREEMENT.

(SPA § 11.4 (emphasis in original).) The second forum selection clause ABC identifies is Escrow Agreement § 1.3(c)(ii), which reads in relevant part:

> [T]he issue of liability for any such dispute with respect to Claims made pursuant to this Section 1.3 may be submitted by any party to a state or federal court located and sitting in the State of Delaware or Utah that has appropriate subject matter jurisdiction chosen by either the Buyer or Seller (such court, the "Chosen Court") for the purposes of obtaining a final, non-appealable order of such Chosen Court (an "Order"). Such Order shall contain the amount, if any, of the Party's liability for the Claimed Amount as finally determined by such Chosen Court . . . .

(Escrow Agreement, Compl. Ex. B., § 1.3(c)(ii).)[1]

ABC originally filed its Motion pursuant to Federal Rule of Civil Procedure 12(b)(3), asking for dismissal based on LaBar's failure to file her action in one of the forums specified in the forum selection clauses. LaBar argued in her Response (doc. 10) that ABC had not asserted the proper procedural mechanism for enforcing a forum selection clause. Instead, a transfer pursuant to 28 U.S.C. § 1404(a), LaBar argued, was the correct procedural device under *In re Atlantic Marine Construction Company, Inc.*, 701 F.3d 736 (5th Cir. 2012). LaBar further posited that even if the Court analyzed this case under *In re Atlantic*'s § 1404(a) standard, it should find in her favor.

Acknowledging this confusion, ABC, in its Reply (doc. 16), asked the Court to stay consideration of this matter given that the Supreme Court had granted certiorari to review the Fifth Circuit's decision in *In re Atlantic*. In the alternative, ABC argued that, if the Court concludes that § 1404(a) applies, it should transfer this case to the District of Delaware in accordance with the parties' forum selection clauses. Though LaBar filed a Sur-Reply (doc. 23) arguing that this Court should not delay consideration of ABC's Motion, her argument was rendered moot when the Supreme Court issued its decision in *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western Dist. of Texas*, 134 S. Ct. 568 (2013) on December 3, 2013.

Following the *Atlantic Marine* decision, ABC filed a Notice of Supplemental Authority (doc. 24) informing the Court that a § 1404(a) motion to transfer was the proper procedural device according to the Supreme Court, and that *Atlantic Marine*'s § 1404(a) analysis required the Court to transfer LaBar's action to the District of Delaware. LaBar filed a Reply to ABC's Notice (doc. 27)

---

[1] LaBar also points to Escrow Agreement § 3.5, which, as discussed below, does not qualify as a forum selection clause for this litigation.

("Notice Reply") re-stating her main arguments against enforcement of the forum selection clause, and asserting the Court should also deny transfer under *Atlantic Marine*'s § 1404(a) analysis.[2]

To sum up, since the filing of ABC's Motion to Dismiss, the parties have abandoned their dispute over the applicability of Rule 12(b)(3)'s dismissal provisions and are now in agreement that ABC's Motion should be considered under § 1404(a). Accordingly, the remaining discussion will focus exclusively on whether to grant in part ABC's Motion by transferring the case to the District of Delaware under § 1404(a).

## II.

## FORUM SELECTION CLAUSE LEGAL STANDARD

A.     *Atlantic Marine's Forum Selection Clause Analysis*

Before *Atlantic Marine*, "'the proper procedural mechanism' for enforcing a forum selection clause" was uncertain. *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) (quoting *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011)). Thus, defendants relied on a variety of procedural devices to enforce forum selection clauses, including motions to dismiss for "improper" venue under Federal Rule of Civil Procedure 12(b)(3), motions to dismiss for "wrong" venue under 28 U.S.C. § 1406(a), and motions to transfer based on *forum non conveniens* as codified in 28 U.S.C. § 1404(a).[3]

In *Atlantic Marine*, "[t]he Supreme Court . . . resolved this uncertainty" by holding "that

---

[2] LaBar has not argued at any point that the Court cannot consider whether to transfer this case in light of ABC's failure to initially ask for a 28 U.S.C. § 1406(a) transfer. And since *Atlantic Marine* clarified a lot of confusion in this context, the Court finds no reason to deny ABC's Motion on this basis.

[3] 28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other [venue] where it might have been brought or to any [venue] to which all parties have consented." 28 U.S.C. § 1404(a).

generally 'the appropriate way to enforce a forum-selection clause pointing to a state or federal forum is through'" a motion to transfer under § 1404(a). *Id.* (quoting *Atlantic Marine*, 134 S. Ct. at 580). The Supreme Court further held that Rule 12(b)(3) and § 1406(a) are not the appropriate procedural mechanisms, because they pre-suppose that venue is "wrong" or "improper" as defined by "federal venue laws," which "say nothing about a forum-selection clause." *Atlantic Marine*, 134 S. Ct. at 577. In contrast, "a motion to transfer under § 1404," the Court reasoned, "does not condition transfer on the initial forum's being 'wrong,'" and "permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Id.* at 579.

Having determined that § 1404(a) is the appropriate procedural vehicle for forum selection clause enforcement, the Supreme Court in *Atlantic Marine* next considered how, if at all, a forum selection clause alters the traditional § 1404(a) analysis. That traditional analysis, the Court noted, requires courts to "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote the 'interest of justice.'" *Id* at 581. But "[t]he calculus changes," the Court found, "when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 31 (1988) (Kennedy, J., concurring)). In these circumstances, the Court concluded, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 579 (quoting *Stewart,* 487 U.S. at 33 (Kennedy, J., concurring)).

More precisely, *Atlantic Marine* held that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 581. "First, the

plaintiff's choice of forum merits no weight." *Id.* at 581-82. Second, "arguments about the parties' private interests" are not to be evaluated; only "arguments about public-interest factors" may be considered in applying *Atlantic Marine*'s § 1404(a) analysis. *Id.* at 582. Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice of law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 582. In conclusion, the Court summarized that "the party acting in violation of the forum-selection clause . . . must bear the burden of showing that public-interest factors overwhelmingly disfavor transfer." *Id.* at 583.

B.     *Additional Forum Selection Clause Issues Post-Atlantic Marine*

While *Atlantic Marine* significantly simplified the forum selection clause inquiry, the Supreme Court's decision did not address the issue of how the use of "mandatory" versus "permissive" language in a forum selection clause impacts the venue transfer decision. Prior to the decision in *Atlantic Marine*, courts considering venue transfer motions based on forum selection clauses examined the clause's terms in an effort to determine whether the clause qualified as *permissive*—i.e., "authorizes venue in a designated forum but does not prohibit litigation elsewhere"—or *mandatory*—i.e., "requires that all litigation be conducted in a specified forum." *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 828 (N.D. Tex. 2013). Although *Atlantic Marine,* involved a mandatory forum selection clause, it remains unclear how, if at all, the presence of "permissive" language in forum selection clause impacts the § 1404(a) analysis.[4] Nonetheless, the Court need not

---

[4] *Compare Compass Bank v. Palmer*, 2014 WL 355986, at *5 (W.D. Tex. Jan. 30, 2014) (agreeing with the defendant that the forum selection "clauses are not 'mandatory,'" but "follow[ing]," without explanation, "*Atlantic Marine*'s direction for enforcement of forum selection clauses"); *United American Healthcare Corp. v. Backs*, — F. Supp. 2d —, 2014 WL 555194, at *7 (E.D. Mich. Feb. 12, 2014) (rejecting defendants' argument that "*Atlantic Marine* does not apply here because this case involves a permissive forum selection clause whereas a the forum selection clause at issue in *Atlantic Marine* was

resolve the issue of whether a permissive clause is treated differently under *Atlantic Marine* because the below analysis concludes the forum selection clauses here are mandatory.[5]

In addition, *Atlantic Marine*'s modified § 1404(a) "analysis presupposes a contractually valid [enforceable] forum-selection clause." *Atlantic Marine*, 134 S. Ct. at 581 n.5. Therefore, a second relevant inquiry is whether, under "federal law[,] . . . an otherwise mandatory and applicable forum clause is *enforceable*." *Martinez*, 740 F.3d at 217 (citation omitted). The party resisting transfer faces a difficult burden here in that federal law dictates that "forum selection clauses are to be enforced unless the forum selection clause is fundamentally unfair and therefore unreasonable." *Calix-Chacon v. Global Intern. Marine, Inc.*, 493 F.3d 507, 511 (2007) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).

With this framework in mind, the Court turns now to the forum selection clauses identified in this case and the parties' arguments for and against enforcement under § 1404(a).

## III.

## ANALYSIS

As mentioned, in light of the Supreme Court's decision in *Atlantic Marine*, the Court's analysis of ABC's Motion is limited to its request for a transfer to the District of Delaware pursuant to 28 U.S.C. § 1404(a) and the forum selection clauses identified by the parties. LaBar opposes this

---

mandatory"); *with RELCO Locomotives, Inc. v. AllRail, Inc.*, — F. Supp. 2d —, 2014 WL 1047153 (S.D. Iowa Mar. 5, 2014) (applying the traditional § 1404(a) balancing test after finding that *Atlantic Marine* "contemplated only mandatory forum-selection clauses when assessing their effect on" the § 1404(a) analysis); *Residential Finance Corp. v. Jacobs*, 2014 WL 1233089, at *3 (S.D. Ohio Mar. 25, 2014) (applying the traditional § 1404(a) analysis after concluding that the forum selection clause at issue in *Atlantic Marine* "stated that all disputes between the parties 'shall be litigated in' specified courts, and the Supreme Court did not construe language similar to that used by the parties in this case").

[5]

request on three grounds. First, as LaBar points out, her "core argument, asserted *ab initio* . . . , is that the clauses contained in the relevant agreements, interpreted together, do not mandate litigation in any specific forum and are permissive, as opposed to mandatory in nature." (Pl.'s Notice Reply 2.) Second, LaBar maintains that even if the Court finds the clauses to be mandatory, it should not find transfer appropriate under § 1404(a). (*Id.* at 3-4.) Lastly, LaBar contends that enforcement of the forum selection clause in these circumstances would be unfair or unreasonable. (*Id.* at 5.) The Court addresses each of these contentions in turn.

   A.   *Permissive or Mandatory Forum Selection Clauses*

   The central issue throughout the briefing on ABC's Motion has been whether the parties' agreements demonstrate an intent to designate courts in Delaware and Utah as the exclusive forums for this litigation. Though the primary dispute here is whether the clauses are mandatory or permissive, they also argue over which provisions qualify as forum selection clauses for this litigation. This initial dispute will be examined before turning to the main issue.

   1.   The Relevant "Forum Selection Clauses"

   The Court first asks which of the clauses identified by the parties are forum selection clauses applicable to this suit. Neither party disputes that Escrow Agreement § 1.3(c)(ii) is one of the relevant provisions. The parties do dispute, however, whether SPA § 11.4 and Escrow Agreement § 3.5 are relevant forum selection clauses in this case.

   First, LaBar suggests that SPA § 11.4 is not applicable here, or at least that it is not as relevant as the Escrow Agreement forum selection clauses, because the Complaint "relates principally to the disposition of the funds in the escrow account and the rights of the respective parties thereto." (Pl.'s Resp. at 13.) But as ABC points out, the SPA is at least equally relevant to LaBar's claim,

because it was the SPA that obligated the parties to enter into the Escrow Agreement and set aside the Escrow Funds for purposes of satisfying any future indemnifications claims by ABC. (Def.'s Reply 5 (citing SPA § 3.4).) Moreover, in order to resolve the pending dispute regarding whether ABC asserted legitimate claims to the Escrow Funds, a court would necessarily have to consider the indemnification provisions set out in SPA § 10. Therefore, this case clearly qualifies as a "SUIT, ACTION OR PROCEEDING ARISING OUT OF" the SPA, and SPA § 11.4 is just as relevant to this case as Escrow Agreement § 1.3(c)(ii).

Second, despite LaBar's efforts to apply Escrow Agreement § 3.5's permissive language to this case, the scope of that provision does not cover her suit. Rather, it instructs the Escrow Agent that, in the event a dispute arises, he is "authorized to retain the Escrow Property" until certain conditions are met.[6] Thus, § 3.5 of the Escrow Agreement is not even directed at the parties and certainly does not address whether they must litigate their dispute in the forums specifically identified in the other two forum selections clauses. Accordingly, the Court need only examine SPA § 11.4 and Escrow Agreement § 1.3(c)(ii) to determine whether they mandate or merely permit that suits be filed in Delaware or Utah courts.

2.    Parties' Intent to Make Courts in Utah and Delaware their Exclusive Forums

"Under federal law, the threshold question in interpreting a forum selection clause is whether

---

[6] *See* Escrow Agreement § 3.5 ("If any conflict, disagreement, or dispute arises between . . . any of the parties hereto . . . concerning any other matter relating to this Escrow Agreement, . . . the Escrow Agent is authorized to retain the Escrow Property until the Escrow Agent (i) receives a final non-appealable order of a court of competent jurisdiction . . . , (ii) receives a written agreement [from the disputing parties] . . . , or (iii) files an interpleader action in any court of competent jurisdiction, and upon the filing thereof, the Escrow Agent shall be relieved of all liability as to the Escrow Property. . . .").

the clause at issue is permissive or mandatory."[7] *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009). Forum selection clauses are "mandatory" if they "require all litigation to be conducted in a specified forum." *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 219 (5th Cir. 2009) (citing *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir.2004)). A mandatory forum selection clause "must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *City of New Orleans*, 376 F.3d at 504 (citing *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974) (per curium)). A "permissive" forum selection clause, in contrast, merely "authorize[s] jurisdiction in a designated forum, 'but do not prohibit litigation elsewhere.'" *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003) (quoting *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir.1997) and citing *Keaty*, 503 F.2d at 956). While this general guidance is instructive, "the determination as to whether a clause is mandatory or permissive must turn 'on the specific language of the contract at issue.'" *OsComp Sys., Inc. v. Bakken Exp., LLC*, 930 F. Supp. 2d 261, 270 (D. Mass. 2013) (quoting *Rivera*, 575 F.3d at 17).

As discussed, there are two relevant clauses here. The first of these clauses—SPA § 11.4—LaBar "concedes . . . is mandatory in nature." (Pl.'s Resp. 13.) For the second forum selection clause—Escrow Agreement § 1.3(c)(ii)—the parties dispute whether it is mandatory or permissive. But the Court need not resolve this dispute over the proper characterization of Escrow Agreement § 1.3(c)(ii). Rather, since this case involves "'separate agreements executed contemporaneously by

---

[7] Both parties assert that federal law applies here. Even if a different body of law applied, the principles of contract law discussed herein are well-established in most jurisdictions and do not appear to conflict with the laws of interpretation from any of the states whose laws potentially apply in this case.

the same parties, for the same purposes, and as part of the same transaction,'" the two forum selection clauses must "'be construed together.'" *Pers. Sec. & Safety Systems, Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) (quoting *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).

While the parties appear to agree that this is the relevant inquiry, they advocate for divergent interpretations of the clauses when read together. LaBar reasons that, when reading the two agreements "together as a single instrument," SPA § 11.4 seems mandatory and Escrow Agreement § 1.3(c)(ii) is permissive, rendering the parties' intent "ambiguous as to the issue of forum selection." (Pl.'s Resp. 16-17.) And since the Fifth Circuit says that mandatory forum selection clauses must be "clear" and "unequivocal," the ambiguous clauses, according to LaBar, must qualify as permissive. (*Id.* at 17.) ABC, on the other hand, maintains that "it would be nonsensical and improper to construe the language of one of the forum selection clauses here as mandatory while construing the other as permissive." (Def.'s Mem. 7-8.) ABC elaborates that such a construction "would render" § 11.4's clear mandate "a nullity." (Def.'s Reply 6.) As explained below, the Court finds ABC's interpretation to be the more reasonable construction.

"It is a venerable principle of contract law that the provisions of a contract should be construed so as to give every provision meaning." *Florida Polk Cnty. v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1084 (11th Cir. 1999) (citing *Jameson v. Mutual Life Ins. Co. of N.Y.*, 415 F.2d 1017, 1020 (5th Cir.1969)). Stated differently, when "attempt[ing] to discern the intent of the parties," courts should "reconcil[e] apparently conflicting provisions and attemp[t] to give effect to all of them, if possible." *Richland Plantation Co. v. Justiss-Mears Oil Co., Inc.*, 671 F.2d 154, 156 (5th Cir. 1982). Such an undertaking is more than possible in these circumstances.

When reading the SPA and Escrow Agreement together as a single instrument, their seemingly conflicting "forum selection clauses"[8] can be reasonably interpreted as serving two very different purposes. To begin, consider SPA § 11.4's clear language and sweeping coverage. Its states the parties' clear intent to "EXCLUSIVELY" submit to jurisdiction in "ANY" appropriate court in Delaware or Utah. This exclusive jurisdiction applies to "ANY" litigation arising out of the SPA. This means the parties agreed that essentially every agreement relevant to their transaction—including SPA § 3.4's accord that the parties set aside the Escrow Property for purposes of indemnification—would be subject to SPA § 11.4's clear mandate. And nothing the parties subsequently did or said, according to SPA § 11.4, could alter their unequivocal promises, as they were "IRREVOCABLY" made.

This unbending forum selection clause is no less "clear" or "unequivocal" simply because Escrow Agreement § 1.3(c)(ii) employs more permissive-sounding language. Indeed, when read in the context in which Escrow Agreement § 1.3(c)(ii) was written, this language can be reasonably seen as an attempt to discourage litigation over the Escrow Property while alluding to SPA § 11.4's clear, forum-specific mandate. To illustrate, Escrow Agreement § 1.3(c)(ii) is part of Escrow Agreement § 1.3's procedures governing, among other things, indemnification claims ABC "desires to make . . . against the Escrow Property pursuant to its rights under" SPA § 3.4. (Escrow Agreement § 1.3(a).) These procedures start with ABC making a "claim" that it "shall deliver a written notice of" to LaBar and the Escrow Agent, which explains "the nature of the [c]laim." (*Id.*) LaBar is then

_____

[8] For ease of reference, the Court calls both SPA § 11.4 and Escrow Agreement § 1.3(c)(ii) "forum selection clauses," even though, as discussed, Escrow Agreement § 1.3(c)(ii) is not really a forum selection clause when viewed in conjunction with SPA § 11.4.

afforded an opportunity to respond by conceding or denying liability in writing; any denial of liability "shall be accompanied by a reasonably detailed description of the basis for such denial." (*Id.* § 1.3(b).) Should the dispute persist, the Escrow Agreement mandates that the parties "shall [then] attempt to resolve such dispute as promptly as possible." (*Id.* § 1.3(c)(i).) "If" after all this, the parties "fail to resolve such dispute," the so-called forum selection clause allows that "the issue of liability . . . may be submitted by any party to a state or federal court located and sitting in the State of Delaware or Utah that has appropriate subject matter jurisdiction chosen by either" LaBar or ABC. (*Id.* § 1.3(c)(ii).) Even then, however, this litigation must be limited to "obtaining a final, non-appealable order," which "shall contain the amount, if any, of the Party's liability for the Claimed Amount as finally determined by such Chosen Court." (*Id.*)

As this context reveals, a reasonable interpretation of Escrow Agreement § 1.3(c)(ii)'s seemingly permissive language, "may be submitted," is that it was intended to promote out-of-court resolutions, rather than create the possibility of litigation outside of those forums they had "IRREVOCABLY AND EXCLUSIVELY" agreed on through SPA § 11.4. Had the language "shall be submitted" been used in Escrow Agreement § 1.3(c)(ii) instead, the clause would seemingly mandate that the parties must file suit once the procedural deadlines in § 1.3 expire. The "may be submitted" language, in contrast, makes clear that the parties can resolve their claim disputes out of court even after the deadlines expire, so long as they subsequently notify the Escrow Agent. Thus, read in harmony with § 11.4 of the SPA, the Escrow Agreement merely re-identifies the forums the parties "IRREVOCABLY AND EXCLUSIVELY" agreed to limit themselves to for "ANY" litigation concerning their agreements.

The reasonableness of this interpretation is reinforced when considering the alternative

- 13 -

conclusion LaBar asks the Court to draw. According to her interpretation of the two clauses, the parties conspicuously inserted § 11.4's clear language in the all-inclusive SPA, then in Escrow Agreement § 1.3(a)(ii) made an exception to their "IRREVOCABLE" agreement by permitting, but not requiring, that suits concerning ABC's rights under SPA § 3.4 "may be submitted" to the same two forums made "EXCLUSIV[E]" by SPA § 11.4. This does not seem to make sense when reading the parties' agreements in tandem. And LaBar offers the Court no reasonable basis to explain why the parties would write such a clear forum selection clause covering all SPA litigation only to render that clause meaningless for a good portion of SPA-related suits.[9]

In the end, LaBar, despite acknowledging the SPA and Escrow Agreement should be read together, avoids offering a coherent interpretation of the two forum selection clauses. Instead, she contends that because the clauses conflict, their combined meaning is ambiguous or unclear, and therefore, the Court must construe the clauses against their drafter, ABC, by finding them permissive. But this argument altogether ignores well-established "[b]lack letter law" requiring "[e]ffect [to] be given, if possible, to all of the language of the contract." *Chadwick v. Esperanza Trade & Trans., Ltd.*, 548 F.2d 1161, 1162 (5th Cir. 1977). It also misapplies the interpretive principle *contra proferentem* upon which LaBar relies, which requires courts "presented with two reasonable, but conflicting, interpretations of a contract provision [to] adopt the interpretation less favorable to

---

[9] *Cf. PNC Bank, N.A. v. Akshar Petroleum, Inc.*, No. 3:13-cv-436, 2014 WL 1230689, at *4-6 (M.D. Fla. Mar. 25, 2014) (citing *Florida Polk*, 170 F.3d at 1083-84) (finding a permissive-sounding forum selection clause mandatory, because to interpret the clause otherwise under the circumstances would not "give the provision meaning"); *Local 75, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers v. Schreiber Foods, Inc.*, 213 F.3d 376, 380 (7th Cir. 2000) (finding an arbitration provision "would retain no meaning" under the defendant's interpretation, and thus, adopting the "more sensible interpretation" which "giv[es] life to [the] provisions" at issue).

the drafter." *Alliance Health Grp. v. Bridging Health Options, LLC*, 553 F.3d 397, 402 (5th Cir. 2008).

Here, the Court is not presented with two reasonable, but conflicting, interpretations. Indeed, as

discussed above, LaBar offers no reasonable interpretation. And unlike the cases LaBar relies on,[10]

the parties were more than clear about their intent to "IRREVOCABLY AND EXCLUSIVELY" bind

themselves to the jurisdiction of a specified forum.

Thus, in sum, the Court concludes that the forum selection clauses applicable to LaBar's

suit—SPA § 11.4 and Escrow Agreement § 1.3(c)(ii)—demonstrate the parties' intent to designate

state and federal courts located in either Utah or Delaware as the exclusive forums for this litigation.

B.      *Transfer Under § 1404(a)*

Having found that the parties agreed not to litigate outside of Utah or Delaware, the Court

next considers whether transfer is appropriate under 28 U.S.C. § 1404(a). LaBar makes two

arguments here. First, she appears to argue that *Atlantic Marine*'s modified § 1404(a) analysis does

not apply because the forum selection clauses point to both Utah and Delaware, rather than a single

forum. (Pl.'s Notice Reply 3-4.) Second, LaBar contends that "[e]ven following the Supreme Court's

decision in *Atlantic Marine*, maintaining the case in this Judicial District would still be appropriate."

(*Id.* at 3.) Neither argument is persuasive.

First, there is no merit to LaBar's contention that a forum selection clause specifying more

than one forum is somehow immune from transfer under § 1404(a). The reasoning in *Atlantic Marine*

---

[10] *See, e.g., City of New Orleans*, 376 F.3d at 505 ("[T]he clauses is, at the very least, susceptible to more than one reasonable interpretation. This ambiguity must be construed against the city as drafter."); *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 128 (5th Cir. 1994) ("[T]he language does not clearly indicate that the parties intended to declare Zurich to be the exclusive forum for the adjudication of disputes arising out of the contract.").

was that § 1404(a)'s "calculus changes" when a "valid forum selection clause" is present, because it "represents the parties' agreement as to the most proper forum . . . , protects legitimate expectations and furthers vital interests of the justice system." *Atlantic Marine*, 134 S. Ct. at 581 (citation omitted). This reasoning is equally applicable when, as here, the parties agree that courts in two states, instead of one, are the "most proper forum[s]." *Id.* Moreover, LaBar's assertion that "there is no principled basis for the Court to select" Delaware or Utah (Pl.'s Notice Reply 4) is both disingenuous and incorrect. If LaBar truly wanted to litigate this case in Utah instead of Delaware, she could have filed suit there, in which case, ABC's transfer request would presumably be governed by the typical § 1404(a) balancing test. But since she decided to violate her agreement to litigate any potential suit exclusively in either Utah or Delaware, the Court's "principled basis" in deciding whether to grant ABC's request for a transfer to Delaware is *Atlantic Marine*'s § 1404(a) approach.

Second, LaBar's contention that transfer is inappropriate under *Atlantic Marine* is also unpersuasive. As a reminder, *Atlantic Marine*'s modified § 1404(a) analysis requires "the party acting in violation of the forum-selection clause . . . [to] bear the burden of showing that public-interest factors overwhelmingly disfavor transfer." 134 S. Ct. at 583. The public-interest factors include: "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)) (brackets omitted).

Here, LaBar points to minor administrative difficulties—the average disposition time of cases is three and a half months longer in the District of Delaware—and facts that probably tip the "local interest" public factor in favor of this forum—most events relevant to this litigation took place here.

- 16 -

But these are far from the "extraordinary circumstances" *Atlantic Marine* had in mind. 134 S. Ct. at 581. As the Supreme Court acknowledged, "the practical result" of *Atlantic Marine*'s § 1404(a) analysis "is that forum-selection clauses should control except in unusual cases." *Id.* at 582. Since there is nothing unusual about LaBar's straightforward contract law claim, the parties' agreement must control. Accordingly, the Court concludes that ABC's request for a transfer to the District of Delaware is appropriate under § 1404(a).

        C.    *Enforceability of the Forum Selection Clauses*

Following the release of *Atlantic Marine*, LaBar asserted for the first time, in her Notice Reply, that the forum selection clauses are unenforceable under these circumstances. (Pl.'s Notice Resp. 5.) Her argument is that enforcement of the forum selection clauses would be unreasonable or unfair in that it would "risk" depriving her of her day in court. (*Id.*) And though she acknowledges that "the private interests of a party are not a factor in the transfer analysis," she goes on to support her assertion with essentially the same facts she relied on before *Atlantic Marine* while arguing that the § 1404(a) private interest factors weighed against transfer, including that "LaBar and her husband (who live in this district) are both wheelchair bound, most of the witnesses are found in this district, and most of the event pertinent to this litigation took place in this district." (*Id.*) These facts are not sufficient for the Court to set aside the parties' valid and enforceable agreements.

As mentioned earlier, "forum selection clauses are to be enforced unless the forum selection clause is fundamentally unfair and therefore unreasonable." *Calix-Chacon*, 493 F.3d at 511. Thus, a forum selection clause must not be set aside unless the party resisting enforcement establishes one of the following:

        (1) the incorporation of the forum selection clause into the agreement was the

product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. 1997)). LaBar only attempts to establish the second factor requiring her to show that "for all practical purposes," she will "be deprived of [her] day in court because of the grave inconvenience or unfairness of the selected forum." *Id.* But she admits that this is only a "risk" for her, not that she will actually be unable to sue if forced to do so in Delaware. This "risk" is made less credible by the fact that she first raised it in her third brief on this motion. Even more, LaBar is suing to recover additional proceeds from a contract in which she was already paid $10,000,000. Under these circumstances, there is no reason to believe that LaBar has no "practical" way of seeing this matter through in Delaware. Therefore, the Court concludes that LaBar has failed to show that the forum selection clauses are not enforceable in these circumstances.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART** ABC's Motion (doc. 6) to the extent it seeks a Rule 12(b)(3) dismissal of LaBar's claims, and **GRANTS IN PART** ABC's Motion to the extent it seeks a 28 U.S.C. § 1404(a) transfer to the District of Delaware in accordance with the parties' valid, enforceable, and mandatory forum selection clauses. As such, the Court **ORDERS** this case transferred to the U.S. District Court for the District of Delaware.

**SO ORDERED.**

**SIGNED: April 30, 2014.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE